## COMMONWEALTH *vs.* SAMUEL P. LEE.

Bristol.   Oct. 26. — Nov. 24, 1886.   DEVENS & W. ALLEN, JJ., absent.

At the trial of an indictment against a man for polygamy, evidence of lewd conduct of the alleged first wife is not admissible to contradict her testimony to the fact of the marriage with her.

At the trial of an indictment for polygamy, the alleged first wife testified to the fact of the marriage with her; and the defendant, in his testimony, denied that such marriage ever took place, but admitted that he and the woman lived together as husband and wife for several years. The defendant's sister testified that the defendant and the alleged first wife lived together in the same house with the witness during a certain time; that the alleged wife left her home early in the evening of a day named, without the defendant, and, about one o'clock the next morning, the witness heard voices near the house; that the witness raised the window, and saw the alleged wife walking and talking with a man, another woman accompanying them; that the witness said to the alleged wife, " Come back into the house where you belong;" that she answered, "I will not, I have a right to do as I have a mind to;" and that she went away with the man and woman, and did not return during the night. The defendant then asked the witness what was the character or reputation of the woman who was with the alleged wife, and stated that he proposed to show that such woman was a lewd woman. This question was excluded. *Held*, that it should have been admitted.

INDICTMENT alleging that the defendant, at New York, in the State of New York, on November 8, 1881, was lawfully married to one Clara B. Power; and that he, on August 19, 1886, at Attleborough, in this Commonwealth, unlawfully married one Nettie I. Rollins. Trial in the Superior Court, before *Thompson,* J., who allowed a bill of exceptions, in substance as follows:

To prove the fact of marriage in New York on November 8, 1881, as alleged, the government produced as a witness Clara B. Lee, the alleged wife, who testified that she and the defendant left Attleborough on November 7, 1881, and went to Boston, where, late in the evening, they took the cars for New York, arrived there the next morning, and went to a clergyman and were lawfully married; that they remained there until about noon of the same day, when they returned to Boston, arriving there in the evening of that day, November 8; that they took a room and boarded at 43 Pleasant Street, in Boston, until the following Saturday, when they returned to Attleborough; and that they lived together as husband and wife, and were reputed to be such, until June 16, 1886, when she left him.

The defendant testified that he and Clara never went to New York, and denied that any marriage was ever solemnized between them anywhere; and further testified that, on Monday, November 7, they went to Boston, as she stated; that they then went to 43 Pleasant Street, in that city, and cohabited until the following Saturday, when they returned to Attleborough, where they lived together as husband and wife until said June 16, when she left him. His testimony as to being and remaining in Boston from Monday night until Saturday was corroborated by the landlady of 43 Pleasant Street, and by her daughter.

The defendant was seventeen years old, and said Clara was between fifteen and sixteen years of age, when they went to Boston together.

On Wednesday, November 9, while in Boston, Clara wrote to her mother, in Attleborough, that she and the defendant had been to New York, and were married there. He had knowledge of this letter at the time, and, while they were living together, never denied that such was the truth; but, on the question whether he ever said that they were so married, or was merely reticent upon the matter, the evidence was conflicting.

She testified that the clergyman by whom they were married gave her a marriage certificate, which she lost before they returned to Boston. No record of the marriage could be found in New York, though diligent inquiry was made therefor.

The principal issue to the jury was whether they were married in New York, as testified to by Clara.

To rebut her testimony, the defendant put in evidence, that, after the alleged marriage, upon being remonstrated with for supposed immodest or improper conduct, in going to ride and being out late at night with other men than her husband, she had said, " I have a right to do as I please ; " and that the brother of the defendant asked her if she thought her conduct was becoming a married woman, to which she answered, " I have a right to do as I please ; you cannot prove our marriage."

A sister of the defendant testified, that the defendant and Clara lived together in the same house with her during the spring of 1883 ; that Clara had been out, without her husband, late on the night of April 26 and 27 ; that she left her home early in the evening of April 29, leaving her husband, and at about one o'clock in the morning of April 30 the witness heard voices near the house ; that the witness raised the window, and saw Clara walking and talking with a man named Titus, another woman accompanying them ; that the witness said to her, " Clara, come back into the house where you belong ; " that she answered, " I will not, I have a right to do as I have a mind to ; " and that she went away with this man and woman, and did not return during the night.

The defendant then asked the witness what was the character or reputation of the woman who was with Clara and Titus. This question was objected to ; and the defendant stated that he offered the evidence in connection with the conversation, as tending to show that Clara did not consider herself under marital obligations, and, in that view, he proposed to show that her associate then was a lewd woman. This evidence was excluded. The defendant also, in connection with what she had said, offered evidence to show that Clara then, and at other times during said cohabitation, associated with lewd persons, and at other times sought privacy with men other than the defendant ; but the judge excluded all this evidence.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. Brown*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

HOLMES, J. Evidence of lewd conduct of the alleged first wife was not admissible to contradict her testimony to a marriage in New York. But evidence should have been admitted that her companion was a lewd woman at the time she answered the defendant's sister's summons, "Come back into the house where you belong." The answer, "I will not, I have a right to do as I have a mind to," was ambiguous in itself. It might have had any one of various shades of meaning, some of which would not, and some of which would, be inconsistent with her being married to the defendant. For instance, it might have meant only a declaration of independence as against the defendant's sister. On the other hand, it might have meant a denial of duty to any one in the house, including her alleged husband. If she had been in the company of a doctor and a sister of charity, bent on an errand of mercy, it might be construed one way; if with a prostitute, it might very naturally be construed the other. *Exceptions sustained.*